MEMO ENDORSED

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/2/2012

| | |
|---|---|
| MALIBU MEDIA, LLC., <br> Plaintiff, <br> vs. <br> DOES 1-4, <br> Defendants. <br> _____/ | Civil Action Case No. 1:12-CV-002960-NRB <br><br> **MEMO ENDORSED** <br><br> MOTION TO PROCEED ANONYMOUSLY |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/18/12

**MOTION TO PROCEED ANONYMOUSLY**

I, John Doe 3 (IP Address 69.119.234.123), representing myself *Pro Se*, and pursuant to Federal Rules of Civil Procedure 26 (c), hereby requests that the court allow me to proceed forthwith anonymously. In addition, the Defendant has, independent of this motion, filed the requested contact information sheet within the required 60 days, as ordered.

## INTRODUCTION

The only evidence in this case does not concretely link the Defendant to an alleged infringement; it merely suggests a link to an ethereal place where an alleged infringement may have occurred. This sole piece of evidence is an IP number that lists the Defendant as the primary ISP subscriber. In this case, the primary subscriber lives in a house not only with multiple residents (including some that have since vacated), but Defendant has previously stated that numerous non-residents had easy access to the ISP. This single piece of evidence does not in itself link the Defendant with the alleged infringement, nor will the Plaintiff's attempts at discovery help to uncover who the alleged infringers may or may not be. To label such

ENDORSEMENT

As plaintiff does not object, the motion by defendant to proceed anonymously is granted and defendant's identifying information is filed under seal. [signature] USDJ 10/2/12

Case 1:12-cv-02960-NRB   Document 22   Filed 10/02/12   Page 2 of 7
Case 1:12-cv-02960-NRB   Document 19   Filed 09/18/12   Page 2 of 7

2

information as evidence seems tentative at best. It is more accurate to say that any evidence linking the defendant to the alleged infringement is nonexistent.

Given that the IP is the only thing supposedly linking the Defendant to this case, as well as reservations the Defendant has about the Plaintiff's intentions in regard to Defendant's personal information, Defendant requests that this case proceeds anonymously in order to protect the Defendant and his/her personal information from Plaintiff.

## **ARGUMENT**

Defendant has good cause to seek to protect their personal information based on the previous actions of both the Plaintiff and Plaintiff's counsel in numerous preceding cases.

To wit:

1. Honorable Judge Edgardo Ramos, also of the Southern District of New York, recently ruled simultaneously on four cases (58 defendants) filed by the Plaintiff that are very similar to this one (12-CV-2949, 12-CV-3810, 12-CV-3818, etc.). While dismissing most of the defendants due to improper joinder (which this Defendant still seeks), Hon. Judge Ramos ordered that in going forward with the remaining Defendants, the court would act as a buffer between the two sides, specifically to prevent any improprieties by the Plaintiff. Hon. Judge Ramos recognized that doing so would only help to prevent abusive litigation tactics:

> The Court, however, remains wary of the potential for subjecting innocent John Doe Defendants the embarrassment and annoyance of being associated with illegally downloading copyrighted material and will carefully limit the expedited discovery to protect the rights of Defendants. Federal Rule of Civil Procedure 26(c) grants courts authority on good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . prescribing a discovery method other than the one selected by the party seeking discovery . . . [and] forbidding inquiry into certain matters, or

limiting the scope of disclosure or discovery to certain matters." The Court holds that this need to protect Defendants, especially given the possibility that he or she has a valid and complete defense to the claims alleged, constitutes good cause for a protective order.

**2.** It is completely founded that Plaintiff may resort to "embarrassment and annoyance," as they are currently facing countersuit in Kentucky for the very tactics Hon. Judge Ramos suggested they might use in New York.

The Plaintiff in this case is currently listed as a Defendant in a Class Action Lawsuit in the Western District of Kentucky (3:12-CV-372-S), in which they are alleged to have acted questionably in regards to attempts to extract settlements from defendants. That case cites a settlement amount of $1,000 - $5,000 because, according to the suit, the Plaintiff here understands "that this amount of money is less than the cost of defense would be if suit were filed."

In addition, the party countersuing the Plaintiff in this case outlined how they were contacted by an individual not associated with any law firm, who demanded a settlement in order to make the case go away. According to that suit, they "demanded that Ms. Barker pay money to settle the lawsuit or she would be publicly identified as having downloaded pornography and would be subject to hundreds of thousands of dollars as a judgment..." The filing goes on to suggest the illegality of using wire transmissions in a "scheme or artifice to attempt to fraudulently obtain money from another," in addition to claiming Defamation, Intentional Infliction of Emotion Distress, and Unjust Enrichment.

That, if nothing else, must meet the requirements of "embarrassment and annoyance" that Hon. Ramos cited in his Protective Order. In addition, given that the Plaintiff has been accused of such questionable tactics in previous similar cases, Defendant therefore has good cause to

Case 1:12-cv-02960-NRB   Document 22   Filed 10/02/12   Page 4 of 7
Case 1:12-cv-02960-NRB   Document 19   Filed 09/18/12   Page 4 of 7

4

believe that such tactics will be used by Plaintiff once again if their personal information is not protected by the Court.

3. Since filing the initial Motion to Quash, Defendant has become aware that the attorney in this case faces possible disciplinary action in the Eastern District of New York for what the Honorable Judge Gary Brown called "indicia of improper action" in two nearly identical cases (one of them involving the same Plaintiff, 12-1147). In those two cases, Judge Brown issued the same kind of Protective Order requested here, clearly ordering that "the ISPs shall produce the information sought to the Court, not to the Plaintiff." The Court was subsequently made aware that the Plaintiff's attorney disobeyed that Order:

> ...plaintiff's counsel apparently ignored, or tried to circumvent, the very safeguards the undersigned put in place to help prevent unfair litigation tactics while permitting plaintiffs to pursue their claims. Notwithstanding this Court's unambiguous order that the identities of two John Doe defendants should be produced *only to the Court*, it appears that plaintiffs' counsel issued subpoenas directly to the relevant Internet Service Provider ("ISP") to produce names and addresses of the John Doe defendants *directly to plaintiffs' counsel*. (Emphasis added by Hon. Brown)

While the plaintiff's attorney has since suggested that such actions were merely a clerical error caused by being overworked from so many similar lawsuits, such actions remain questionable and nevertheless give further cause for this Defendant to seek protection from the court. Regardless of intent, the Plaintiff's attorney still attempted to gain the private information of Defendants, even after the Court Ordered against it, and that in itself should be cause for caution going forward.

Case 1:12-cv-02960-NRB   Document 22   Filed 10/02/12   Page 5 of 7
Case 1:12-cv-02960-NRB   Document 19   Filed 09/18/12   Page 5 of 7

5

**4.** Most importantly, merely a few days after the personal information of the other defendants in this case was released, the sole defendant that plaintiff was able to contact settled for an undisclosed sum (John Doe #4). While the plaintiff will argue that such tactics are customary in this type of case, it is more than likely that the plaintiff settled for a small percentage of the damages originally sought. Research suggests that such cases are settled for anywhere from $700-$5,000 (Judge Brown cited an amount in the middle, $2,900), which amounts to 3% or less of the original amount sought in initial complaints. If this is the case with John Doe #4, it suggests that using the maximum damage amount of $150,000 (for a video that can be legally downloaded from a website along with dozens of others for a $30 monthly subscription) was merely a scare tactic to pressure defendants.

As mentioned in this motion's Introduction, Plaintiff's "evidence" is very weak and fails to hold up to the most cursory scrutiny. As outlined in the initial Motion to Quash, linking ISPs to potential infringers more often than not draws innocent parties into litigation (at a rate suggested to be between 30% and 66%). In reality, the evidence lends itself to the probability of defendants being falsely identified, and therefore the Court should take extra steps to protect potentially innocent parties from the kind of abusive litigation tactics that have led to at least one countersuit against the Plaintiff.

Furthermore, by settling for as little as < 1% of the total amount sought, common sense suggests that Plaintiff understands the major flaw in their one shred evidence (and thus the whole of their case), which leaves, as their best recourse, an attempt to effect a swift settlement. As it appears only one of the three named defendants could be located, and that named defendant settled with the plaintiff in what can only be described at a swift manner (dismissal paperwork

Case 1:12-cv-02960-NRB   Document 22   Filed 10/02/12   Page 6 of 7
Case 1:12-cv-02960-NRB   Document 19   Filed 09/18/12   Page 6 of 7

6

was filed with the Court only days after their name/addresses were released to the plaintiff), that seems to be the Plaintiff's *modus operandi* in this case.

Since the Plaintiff has been accused of using questionable tactics in the past, this defendant has good cause to believe similar questionable tactics may have been either used or suggested with other defendants named in this case, and has sufficient cause to believe such tactics will continue to be used unless the Court intervenes.

## **CONCLUSION**

Defense seeks very reasonable protection, based on both the limited amount of questionable evidence presented by the Plaintiff and based on the actions of both the Plaintiff and the Plaintiff's attorney, in cases within and outside of New York State, and very possibly even within this very case. Furthermore, such protective requests have been supported by at least two Judges in New York State.

Defendant has very real suspicions as to the Plaintiff's motives and tactics, as supported through both the ruling of at least two New York State Judges and an independent countersuit. Therefore the Defendant deems it imperative that the court should act as an intermediary to prevent such abuses from happening (or continuing to happen) in this case.

As Judge Ramos cited, Judges may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . prescribing a discovery method other than the one selected by the party seeking discovery . . . [and] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." It has been clearly demonstrated that not only does this type of litigation lend itself to such embarrassment and oppression as specifically outlined in Fed. Civ. 26 (c), but it has also clearly

been demonstrated that such embarrassing and oppressive tactics have been used by the Plaintiff in the past.

Therefore,

Given that there has already been a precedent set in the Southern District of New York by Hon. Judge Ramos for protecting defendants in similar cases; and

Given that it is known that the plaintiff's counsel has recently demonstrated a disregard for such Protective Orders even after they are issued by the Court; and

Given that it is known the Plaintiff has acted questionably once defendants are named; and

Given that there is good cause to believe Plaintiff (or someone working for Plaintiff) will attempt to swiftly extract a settlement as was done with John Doe #4; and

Given that there is only one piece of evidence in this case, and said evidence does not even tentatively link the defendant with the alleged infringement but rather leaves wide open the possibility of drawing innocent parties into litigation,

John Doe #3 believes that there is more than enough good cause, if the case is not outright dismissed *sua sponte* for lack of evidence or severed because of improper joinder, to proceed with this case anonymously.

Respectfully submitted,

By: /s/ *John Doe 3*

John Doe 3, (IP Address 69.119.234.123)
*Pro Se*